**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL DRAYAGE SERVICES (DE), LLC,<br><br>        Plaintiff,<br>    v.<br><br>MELIS GRUUP, LLC,<br>        Defendant. | CIVIL ACTION NO. 3:25-CV-1282<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is Defendant Melis Gruup, LLC's ("Melis") motion to dismiss, or motion to transfer venue in the alternative. (Doc. 10). Plaintiff National Drayage Services (DE), LLC ("NDS") initiated this action by the filing of a complaint on July 14, 2025. (Doc. 1). For the following reasons, Melis's motion to dismiss, or motion to transfer venue in the alternative, shall be **DENIED**. (Doc. 10).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from NDS's complaint and, for the purposes of the instant motion, is taken as true. (Doc. 1). Around September 2024, NDS and Melis formed a contract, which obligated Melis to pay NDS for its transportation services. (Doc. 1, ¶¶ 9-10). Per Melis's request, NDS would pick up the shipment from a specified port or facility and transport it to its destination. (Doc. 1, ¶ 13). In addition to providing transportation services, NDS secured the necessary equipment and incurred related costs, including per diem and chassis charges. (Doc. 1, ¶ 12). Upon delivery, NDS sent invoices to Melis for the services it provided and the costs it incurred, but it never received payments. (Doc. 1, ¶¶ 14-15).

In the complaint, NDS asserts the following counts: Count I – Failure to Pay Motor Carrier Freight and Accessorial Charges; Count II (in the Alternative) – Breach of Contract;

Count III (in the Alternative) – Unjust Enrichment; and Count IV (in the Alternative) – Promissory Estoppel. (Doc. 1, ¶¶ 16-43). On August 19, 2025, Melis filed the instant motion to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure.[1] (Doc. 10). On August 20, 2025, Melis filed its brief in support. (Doc. 13). On September 10, 2025, NDS filed its brief in opposition to Melis' motion. (Doc. 17). Melis did not file a reply brief. This matter is now ripe for adjudication.

## II.    LEGAL STANDARD

### A.    MOTION TO DISMISS UNDER 12(B)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Rule 4 of the Federal Rules of Civil Procedure provides the requisite framework for properly serving a summons and complaint. Fed. R. Civ. P. 4. When a plaintiff fails to comply with the procedural requirements of Rule 4, a party may move to dismiss a complaint for "insufficient service of process" under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(5); *see McDonald v. SEIU Healthcare Pennsylvania*, No. 1:13-CV-2555, 2014 WL 4672493, at *3 (M.D. Pa. Sept. 18, 2024) ("[A] Rule 12(b)(5) motion may be used to challenge the method of service of the lack of service."). Upon asserting a Rule 12(b)(5) challenge, "the party asserting the validity of service bears the burden of proof on that issue." *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 452 (M.D. Pa. 2007) (quoting *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)).

### B.    MOTION TO TRANSFER VENUE

---

[1] In the alternative, Melis also filed a motion to transfer venue to the Northern District of Texas. (Doc. 10).

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). "'The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)). A court adjudicating a motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division "where [the case] might have been brought." 28 U.S.C. § 1404(a); *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If venue is proper in the proposed district, courts consider the following non-exhaustive list of factors first outlined by the Third Circuit in *Jumara v. State Farm Insurance Company*:

> (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law.

> *High River*, 353 F. Supp. 2d at 491 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

The first six factors are considered the "private interest factors," while the last six factors are the "public interest factors." *Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No. 3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024). The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of

3

venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995).

**III.    DISCUSSION**

A. MOTION TO DISMISS

First, the Court will address whether NDS provided defective service on Melis. Melis argues that NDS only left a summons on a desk at Melis's office which does not constitute proper service "on anyone much less the registered agent of the defendant.". (Doc. 13, at 2). NDS counters that it properly served Melis by placing the paperwork on the desk in the presence of an employee because "the process server reasonably concluded" that the registered agent at Melis was "deliberately evading service[.]" (Doc. 17, at 9).

Rule 4(h) of the Federal Rules of Civil Procedure governs the service of process upon a corporation, partnership, or association. Fed. R. Civ. P. 4. The rule provides that service of process upon such entities must be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(A)-(B). For purposes of Rule 4(h)(1)(A), Rule 4(e)(1) provides that service of process may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 453 (E.D. Pa. 2015) ("Service also may be completed by following the laws of the state where the case is filed or the state where service is made."). Here, since the Court sits in Pennsylvania and the summons was served in

4

Texas, NDS was required to comply with Pennsylvania law, Texas law, or Rule 4(h)(1)(B).

*See Hernandez v. T-Mobile, USA, Inc.*, No. 3:23-CV-498, 2024 WL 5672517, at *3 (M.D. Pa. Jan. 19, 2024), *report and recommendation adopted*, No. 3:23-CV-498, 2024 WL 5673309 (M.D. Pa. Feb. 14, 2024) (noting that because the court was located in Pennsylvania and the summons was mailed to New Mexico, plaintiff was required to comply with Rule 4(h)(1)(B), Pennsylvania law, or New Mexico law).

### 1. NDS properly served Melis under Rule 4(h)(1)(A) and Pennsylvania law.

Rule 424 of the Pennsylvania Rules of Civil Procedure governs service of process on corporations. *C.O. v. Universal Health Services, Inc.*, No. CV 24-4322, 2025 WL 564934, at *1 (E.D. Pa. Feb. 19, 2025).[2] Rule 424 provides that

> Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons, provided the person is not a plaintiff in the action:
>
> (1) an executive officer, partner or trustee of the corporation or similar entity, or (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

> Pa. R. Civ. P. 424.

The Supreme Court of Pennsylvania has stated that Rule 424 requires service to be made on the person for the time being in charge of the defendant's regular place of business in order to meet the "due process requirement that a defendant be given adequate notice that litigation has commenced." *Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 549 Pa. 84, 95 (Pa. 1997). The Third Circuit has acknowledged that "[t]he propriety of service under Pennsylvania law

---

[2] Despite that both NDS and Melis do not cite Rule 424 of the Pennsylvania Rules of Civil Procedure, the Court will review the statute in its analysis. Pa. R. Civ. P. 424.

commonly depends upon the relationship between the person receiving process and the party to the litigation." *Grand Ent. Grp.*, 988 F.2d at 485. The Third Circuit explained that, under Pennsylvania law, the "person for the time being in charge thereof" must have "some direct connection to the party to be served." *Grand Ent. Grp.*, 988 F.2d at 486 (finding that plaintiff did not properly serve the defendant because the process server served a receptionist who did not work for the defendant nor represent that she did). A person for the time being in charge "must either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." *Grand Ent. Grp.*, 988 F.2d at 486 (defining the phrase with respect to Rule 402 of the Pennsylvania Rules of Civil Procedure). The person "'should either derive or appear to derive authority from the party upon whom service is attempted.'" *C.O.*, 2025 WL 564934, at *2 (citations omitted). According to the Pennsylvania Supreme Court, cases addressing what constitutes a person "for the time being in charge of" have a common thread: "there must be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it." *Cintas Corp.*, 549 Pa. at 96.

Here, in making a third attempt to serve Melis's registered agent, Reginald Delasbour ("Delasbour"), the service processer spoke with a Melis employee and placed the summons on a desk in her presence. (Doc. 5; Doc. 13-1). The Court will assess which category the Melis employee, Cristal Chavez ("Chavez"), falls under Rule 424. Pa. R. Civ. P. 424. Chavez states in an unsworn declaration that she spoke with the process server during her workday in the office on the date he made the delivery. (Doc. 13-1). According to Melis, Chavez was not authorized to accept service. (Doc. 13, at 2); Pa. R. Civ. P. 424(3). Nothing before the Court

6

indicates that Chavez is an executive officer, partner, or trustee at Melis. Pa. R. Civ. P. 424(1). Thus, for service to be proper Chavez must have been a "person for the time being in charge[.]" Pa. R. Civ. P. 424(2).

Chavez had a sufficient direct connection to be considered a person for the time being in charge. As an employee at Melis, Chavez informed the process server that the registered agent, Reginald Delasbour ("Delasbour"), was not in the office at the time of delivery. (Doc. 13-1). From the process server's view, this knowledge could lead him to reasonably believe that Chavez "appear[s] to derive authority from" Delasbour. See C.O., 2025 WL 564934, at *2; see also Victory v. Berks Cnty., No. CV 18-5170, 2019 WL 1507769, at *25 (E.D. PA. Apr. 5, 2019) (finding that, under state law, a process server provided sufficient service of process after reasonably believing that a correctional officer in an entrance booth at a county jail had a direct connection to the individual defendants). Thus, the Court finds that NDS properly served Melis under Rule 4(h)(1)(A) of the Federal Rules of Civil Procedure and Pennsylvania law. See State Farm Mut., Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 429 (E.D. Pa. 2008) (finding that providing service to a school teacher at a location containing offices for all defendants had a "'direct connection to the party to be served'" because the teacher was employed by at least one of the defendants); see also Just Enters., Inc. v. O'Malley & Langan, P.C., 560 F. Supp. 2d 345, 352 (M.D. Pa. 2008) (noting that "courts have been less concerned with the actual title of the person receiving service and more concerned that there 'be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it'"); see also Cintas Corp., 549 Pa. at 96 (finding service proper where summons was delivered to defendant's receptionist). Therefore, Melis's motion to dismiss for insufficient service of

process is **DENIED.** (Doc. 10).

B.  MOTION TO TRANSFER VENUE

**1. This action might have been brought in the Northern District of Texas because the billing agreement contains a permissive forum selection clause.**

Melis seeks to transfer this action to the Northern District of Texas because most of the significant contacts relevant to this issue exist in Dallas and Harris Counties. (Doc. 13, at 4). NDS argues that venue is proper here because "NDS resides here, and the billing agreement provides for disputes between the parties to be resolved in Pennsylvania." (Doc. 17, at 14).

Under 28 U.S.C. § 1404(a), the Court must first determine "whether venue would be proper in the transferee district."[3] *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (citing *Jumara*, 55 F. 3d at 879). If the first prong is satisfied, then the Court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F. 3d at 879. When a case involves a forum-selection clause, the clause can be "highly instructive but not dispositive to a district court's analysis of a motion to

---

[3] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine,* 571 U.S. at 60. The doctrine of *forum non conveniens* embodies the notion that:

> [a]lthough a plaintiff's choice of forum should rarely be disturbed, '[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would establish… oppressiveness and vexation to a defendant… out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.

*Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 211 n.8 (3d Cir. 2016) (quoting *Kisano Trade & Invest Ltd. V. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)).

transfer under § 1404(a)." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. CV 21-4664, 2021 WL 5987318, at \*4 (E.D. Pa. Dec. 17, 2021).

Forum-selection clauses are either mandatory or permissive. *See Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 185 n.8 (3d Cir. 2017). "'[A] mandatory forum selection clause provides venue is proper only in the identified forum. A permissive forum selection clause authorizes venue in the selected forum.'" *Wall v. Corona Capital, LLC*, 756 F. App'x 188, 191 (3d Cir. 2018), *as amended on denial of reh'g* (Dec. 28, 2018). When a dispute involves a mandatory forum selection clause, the district court must undertake a modified § 1404(a) transfer test.[4] *Maguire*, 2021WL 5987318, at \*4. Courts in the Third Circuit have not extended *Atlantic Marine*'s modified analysis to permissive forum selection clauses. *Thru Tubing Sols., v. Robbins*, No. 4:23-CV-01476, 2023 WL 8549131, at \*4 (M.D. Pa. Dec. 11, 2023) (citation omitted); *see Castle Co-Packers, LLC v. Busch Mach., Inc.*, 687 F. Supp. 3d 659, 669 n.2 (W.D. Pa. 2023) (noting that a district court must consider both private and public factors under *Jumara* when facing a permissive forum selection clause).

Here, the forum selection clause is permissive. The clause states, "Customer agrees to

---

[4] A mandatory forum selection clause modifies the § 1404(a) balancing test in three ways:

> First, no weight is given to the plaintiff's choice of forum. Second, the court does not consider arguments about the parties' private interests. Instead, a district court may consider arguments about public-interest factors only. Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public interest factors—the only factors that remain to be balanced—will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

> *Maguire*, 2021WL 5987318, at \*5 (citing *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57-58 (3d Cir. 2018) (original quotation marks and citations omitted).

submit to the jurisdiction of Pennsylvania with any suit related thereto. Customer waives any arguments or claim that Pennsylvania lack jurisdiction over Customer and agrees to personal and subject matter jurisdiction in Pennsylvania." (Doc. 17-1). Pennsylvania district courts tend to interpret clauses similar to this as permissive they lack unambiguous, exclusive language. *See Zokaites v. Land-Cellar Corp.*, 424 F. Supp. 2d 824, 835 (W.D. Pa. 2006) (finding that phrases "irrevocably submits and consents" and "waives any and all objections" indicate that the parties only agreed that a particular forum was appropriate, rendering the clause permissive); *see also Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 460 (E.D. Pa. 2013) (finding a forum selection clause permissive because it only permitted, not mandated, enforcement in a Pennsylvania federal or state court); *see also Sept. Props. LLC v. Millionaire Gallery, Inc.*, No. CV 18-988, 2018 WL 4466066, at *5 (E.D. Pa. Sept. 18, 2018) (noting that "'an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'") (citation and emphasis omitted); *see also Samuel T. Freeman & Co. v. Hiam*, No. CIV.A. 12-1387, 2012 WL 2120474, at *8 (E.D. Pa. June 11, 2012) ("It is well-established that clauses that merely empower a court to hear litigation and in effect waive any objection to personal jurisdiction in that court—commonly referred to as 'consent to jurisdiction' clauses—are 'permissive' in that they allow parties to air any dispute in a specific court without requiring them to do so.") (citation omitted). Because the dispute involves a permissive forum selection clause, the Court recognizes that another court could have jurisdiction over this issue. *Dawes v. Pub. Am., LLC*, 563 F. App'x. 117, 118 (3d Cir. 2014) (noting that a permissive clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere").

While the permissive forum selection clause provides that Pennsylvania has

jurisdiction, Melis must show that its preferred forum also has jurisdiction in order to transfer the case. (Doc. 17-1). If a plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960). Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." A business entity is "deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). Here, Melis is incorporated in Texas and maintains its principal place of business in Lancaster, Texas, located in the Northern District of Texas. (Doc. 1, ¶ 3). Thus, Texas has general personal jurisdiction over Melis, so venue is proper in the Northern District of Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]… bases for general jurisdiction.'") (citations omitted).

### 2.  The Private Interest *Jumara* Factors

Having found that the action might have been brought in either the Northern District of Texas or the Middle District of Pennsylvania, the Court now considers the private interest factors as outlined in *Jumara*, 55 F. 3d at 879. The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum.

*Jumara*, 55 F. 3d at 879 (citations omitted). These factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.*, 2024 WL 816619, at *3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

The first private interest factor relates to the plaintiff's choice of forum. *Petroleum Serv. Co.*, 2024 WL 816619, at *3. Melis argues that NDS's forum choice of the Middle District of Pennsylvania should be given less deference here because the events of the case occurred in Texas, such as the transportation services and the relevant communications with NDS employees. (Doc. 13, at 3). NDS avers that its choice of forum should prevail unless the balance of convenience strongly favors Melis. (Doc. 17, at 17). NDS's forum choice is "a paramount consideration in any determination of a transfer request" and should not be disturbed without strong reasons. *Shutte*, 431 F.2d at 25. NDS has its principal place of business in Schuylkill Haven, Pennsylvania, which is located in the Middle District of Pennsylvania. (Doc. 1, ¶ 1). The Court acknowledges that Texas has an interest in this litigation because, as discussed below, the relevant events in this case occurred in Texas. While Pennsylvania's interest leads the Court to conclude that the first factor slightly disfavors transfer, Pennsylvania is not entitled to considerable deference given Texas's interest. *See Aouad v. Machado*, No. CV 23-1731, 2023 WL 5339615, at *3 (E.D. Pa. Aug. 18, 2023) (acknowledging that while plaintiff filed suit in its home forum, the operative facts occurred in another federal district, which entitled the first private interest factor less than considerable deference).

The second private interest factor concerns the defendant's choice of forum. *Jumara*, 55 F.3d at 879. This factor is redundant to the transfer analysis because Melis's preference for

12

the Northern District of Texas is inherent in this motion. (Doc. 10); *see Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) ("'in reality [the second factor] does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum.'") (quoting *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)). The second private factor is neutral. *See Jumara*, 55 F.3d at 879.

The third factor examines where the claim arose. *Jumara*, 55 F.3d at 879. Melis argues that "the NDS employees that directed, handled and carried out the transportation services at issue did so in the state of Texas in Dallas and Harris Counties." (Doc. 13, at 4). NDS counters by arguing that Pennsylvania is where "a substantial part of the events giving rise to the claim occurred," such as Melis's performance of contractual obligations and business activities. (Doc. 17, at 18). To determine whether "events or omissions giving rise to the claim" are substantial in a contractual dispute, the main factors to be considered are "where the contract was to be negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *See Whipstock Nat. Gas Servs., LLC v. Trans Energy, Inc.*, No. 02:08CV1084, 2008 WL 4287158, at *3 (W.D. Pa. Sept. 17, 2008) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Considering these factors, the Court finds that substantial events in this dispute occurred in Texas. Melis engaged with NDS for its transportation services. (Doc. 1, ¶ 7, 12). NDS provided transportation services in Texas. (Doc. 13, at 4, 6)[5]. The alleged breach occurred in Texas when Melis failed to pay NDS. (Doc. 1, ¶ 15). Thus, the third *Jumara* factor strongly favors transfer. *Fr. Meyer Sohn N. Am. LLC v. Nordana (USA) Inc.*, No. CV 12-1632, 2012 WL 13005642, at *3 (E.D. Pa. July 16,

---

[5] The complaint does not specify where the contract was to be performed. (Doc. 1).

2012) (noting that claims arose in two locations: where plaintiff contacted defendant to form a contract and where the performance of the contract occurred); *S.O.S. Salson Inc. v. Acad. Corp.*, No. CIV. 092159 WHW, 2009 WL 3110952, at *5 (D.N.J. Sept. 23, 2009) (finding that claim arose in Texas, not in New Jersey, because the agreement required plaintiff "to bring freight to a building in Houston, Texas, (where [p]laintiff would sort the freight)"); *Petroleum Serv. Co.*, 2024 WL 816619, at *5 (finding that the third factor favored transfer when "plaintiff's claims arose from the alleged conduct of defendant's Missouri-based employees").

The fourth and fifth private interest factors consider the convenience of the parties and any potential witnesses. *Jumara*, 55 F.3d at 879. Melis avers that most of the witnesses reside in Texas. (Doc. 13, at 6). NDS responds by stating that "[w]itnesses can appear and be deposed remotely mitigating any alleged inconvenience." (Doc. 17, at 17).

Typically, courts consider identified witnesses and their location for this factor. *See Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *8-9 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted,* No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) (analyzing the parties' identified witnesses and their locations and convenience for this factor); *see also Petroleum Serv. Co.*, 2024 WL 816619, at *5. While neither party has identified all its witnesses at this stage in the litigation, it is likely that many of the NDS employees who provided the transportation and the Melis employees directly involved in this transaction live in proximity to Texas. *See Rauhala v. Greater New York Mut. Ins.*, No. CV 22-1788, 2022 WL 16553383, at *4 (E.D. Pa. Oct. 31, 2022) (finding that the fifth private interest favored venue transfer because the potential witnesses likely knowing the relevant information were located in the transferee district). However, the Court agrees with NDS that Melis "fails to account for the modern realities of federal litigation." (Doc. 17, at 17). Melis

14

has not shown any likely hardship or unavailability of potential key witnesses due to litigation in the Middle District. (Doc. 13). The Court finds that the fourth and fifth factors are thus neutral or slightly favor transfer. *See Etheridge*, 2021 WL 1564336, at *5-6 (holding that the convenience factors are neutral when there is no evidence that a particular witness would be unavailable in one forum).

The sixth private interest factor relates to the location of books or records. *Jumara*, 55 F.3d at 879. Melis asserts that requiring records to travel 1,300 miles from Dallas would serve as an inconvenience to both parties. (Doc. 13, at 4). NDS argues that "[d]ocuments are electronically stored (or can be easily scanned) and transferred via ShareFile/download link." (Doc. 17, at 17). The Court agrees with this argument. Courts have given this factor less weight in the age of modern technology, where records can be produced or transmitted electronically. *See Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *5 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted*, No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) ("[m]odern technological advances have rendered this factor less significant than it was previously."); *see also Petroleum Serv. Co.*, 2024 WL 816619, at *6 ("the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral."). Therefore, the sixth private interest factor is neutral.

### 3. The Public Interest *Jumara* Factors

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious or inexpensive; (3) the congestion of the courts' dockets; (4) the local forum's interest in deciding the case; (5) the public policies

15

of the fora; and (6) the trial judge's familiarity with any state law. *Jumara*, 55 F.3d at 879-80 (citations omitted). These factors ask the Court to consider "'where litigation can proceed in the most efficient and inexpensive fashion.'" *Petroleum Serv. Co.*, 2024 WL 816619, at *6 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. CIV.A. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)).

Other than defining the public interest factors and providing conclusory statements without further argument, Melis fails to provide an analysis. (Doc. 13, at 6). NDS also does not include any analysis of the public interest factors in the brief. (Doc. 17). Instead, NDS argues that "the events giving rise to the dispute are intrinsically tied to Pennsylvania." (Doc. 17, at 18).[6] Thus, the Court finds that the public interest factors are neutral because neither makes any argument. *See Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021) (finding the first and fifth public interest factors neutral because neither party presented arguments); *see also Aouad*, 2023 WL 5339615, at *5 (noting that neither party made arguments regarding the first and sixth factors, rendering them neutral); *see also Alers v. Pa. Higher Educ. Assistance Agency*, No. 20-CV-2073, 2022 WL 3722085, at *6 (E.D. Pa. Aug. 29, 2022) (finding the first, fifth, and sixth public interest factors neutral because neither party presented arguments).

### 4. Balancing the *Jumara* Factors

After considering the relevant private and public *Jumara* factors, most of these factors do not weigh in favor of transfer. Some considerations weigh in favor of transfer, especially the third private interest factor because the events giving rise to the claim occurred in the

---

[6] After finding that the third private factor weighs in favor of transfer, the Court rejects this argument.

proposed transferee district. As indicated, however, most of the *Jumara* private and public interest factors are neutral. In view of the fact that the burden of establishing the need for venue transfer rests with the movant, Melis has failed to satisfy that burden under 28 U.S.C. § 1404(a). *See Jumara*, 55 F.3d at 879. Accordingly, Melis's motion to transfer is **DENIED without prejudice**. (Doc. 10).

IV.    CONCLUSION

Based on the foregoing, Melis's motion to dismiss is **DENIED** without prejudice. (Doc. 10). Melis's motion to transfer is **DENIED** without prejudice. (Doc. 10).

An appropriate Order follows.

                                                    **BY THE COURT:**
**Dated: March 23, 2026**

                                                    *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States District Judge**

17